IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRENDA RAMOS, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:20-CV-1256-RP |
| CHRISTOPHER TAYLOR and CITY OF AUSTIN, | § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendant Christopher Taylor's ("Taylor") Motion to Dismiss Plaintiff's Third Amended Complaint, (Dkt. 124), Plaintiff Brenda Ramos's ("Plaintiff") Motion to Strike Defendant Taylor's Motion to Dismiss, (Dkt. 126), Defendant Taylor's Motion to Stay Discovery Pending a Ruling on Qualified Immunity, (Dkt. 134), and Plaintiff's Motion to Convert Defendant Taylor's Motion to Dismiss to a Rule 56 Motion for Summary Judgment, (Dkt. 141). Having considered the parties' briefs, the record, and the relevant law, the Court will deny Taylor's second motion to dismiss, dismiss as moot Plaintiff's motion to strike Taylor's second motion to dismiss, dismiss as moot Taylor's motion to stay discovery, and dismiss as moot Plaintiff's motion to convert Taylor's second motion to dismiss to a motion for summary judgment.

**I. BACKGROUND**

This case arises out of the April 24, 2020, police shooting of Mike Ramos ("Ramos"), a Black and Hispanic resident of Austin. His mother, Plaintiff Brenda Ramos, filed this suit against the City of Austin and Austin Police Department ("APD") Officer Christopher Taylor.[1] On December 19, 2022, the Court denied Taylor's first motion to dismiss, (Dkt. 49), finding that Plaintiff had

---

[1] A thorough discussion of this case's factual background is provided in the Court's Order denying Taylor's first motion to dismiss. (Order Denying Mot. to Dismiss, Dkt. 73, at 1–5).

1

plausibly alleged that Taylor violated Ramos's constitutional rights and acted with unreasonable and excessive force. (Order Denying Mot. to Dismiss, Dkt. 73, at 12–13). The Court therefore held that Plaintiff had sufficiently pleaded facts to overcome qualified immunity at the motion-to-dismiss stage. (*Id.* at 13). Taylor did not appeal the Court's denial of his qualified immunity defense.

On July 13, 2023, the Court subsequently granted Defendant City of Austin's motion to stay the case pending the underlying criminal trial of Taylor. (Order Staying Case, Dkt. 90). On April 1, 2025, the Court granted via text order the parties' joint motion to lift the stay, (Dkt. 102), as the criminal case against Taylor was dismissed. (Text Order on April 1, 2025). On August 21, 2025, the Court granted via text order Plaintiff's motion for leave to file a third amended complaint, which was unopposed.[2] (Text Order on August 21, 2025). Plaintiff represented in her motion for leave that her Third Amended Complaint "does not add additional Parties or claims. Plaintiff has simply added additional allegations regarding her *Monell* claim and has edited her claims against Defendant Taylor for clarity." (Mot. for Leave, Dkt. 113, at 1).

On September 24, 2025, Taylor filed a Motion to Dismiss Plaintiff's Third Amended Complaint. (Second Mot. to Dismiss, Dkt. 124). Plaintiff filed a motion to strike Taylor's second motion to dismiss, (Dkt. 126); Taylor filed a motion to stay discovery pending a ruling on his qualified immunity defense within his second motion to dismiss, (Dkt. 134); and Plaintiff filed a motion to convert Taylor's motion to dismiss into a motion for summary judgment, (Dkt. 141).

## II. LEGAL STANDARD

The law of the case doctrine "is based on the salutary and sound public policy that litigation should come to an end." *Matter of AKD Investments*, 79 F.4th 487, 491 (5th Cir. 2023) (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)). The doctrine applies "only to issues that were actually

---

[2] Though the motion was originally designated as opposed, Plaintiff filed an amended certificate of conference confirming that both Defendants were unopposed to her motion for leave to file a third amended complaint. (Am. Cert. of Conference, Dkt. 116).

decided, rather than all questions in the case that might have been decided, but were not." *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 425 (5th Cir. 2006) (quoting *Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001)). Generally, "when a court decides an issue, that decision should continue to govern the same issues in subsequent stages of the same case." *Matter of AKD Investments*, 79 F.4th at 491 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation modified).

### III. DISCUSSION

As discussed in Section I, *supra*, Plaintiff filed her Third Amended Complaint, (Dkt. 117), to add allegations related to her *Monell* allegations against Defendant City of Austin. (*See* Second Mot. to Amend Compl., Dkt. 113, at 1). She also edited her claims against Taylor "for clarity." (*Id.*). Plaintiff has now moved to strike Taylor's motion to dismiss to her Third Amended Complaint, arguing that the motion is barred by the law of the case doctrine and that denial of the motion is "require[d]." (Pl.'s Mot. to Strike, Dkt. 126, at 3). She also argues that the second motion to dismiss is prohibited by Federal Rule of Civil Procedure 12(g). (*Id.* at 4).

Taylor argues in response that "[s]ignificant information was added about Officer Taylor himself," and cites generally to pages 12–13 of Plaintiff's Third Amended Complaint. (Taylor's Resp. to Mot. to Strike, Dkt. 131, at 3). He also asserts that the law of the case doctrine does not bar this Court from granting his motion to dismiss. (*Id.* at 3–4). Taylor, relying on the factors set forth by the Fifth Circuit for "revisit[ing] the determinations of an earlier court," *see In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009), arguing that he has "offered fully authenticated videos as **new evidence** that Plaintiff incorporated by reference into her Third Amended Complaint" and that controlling authority has changed since the Court's Order denying his first motion to dismiss. (*Id.* at 4–6). Finally, Taylor argues that Federal Rule of Civil Procedure 12(g) does not bar his subsequent motion to dismiss for failure to state a claim. (*Id.* at 6).

3

First, the Court agrees with Taylor that it has the discretion to not apply the law of the case doctrine. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (holding that the law of the case doctrine "does not operate to prevent a district court from reconsidering prior rulings" and that the doctrine is "designed to prevent unnecessary reconsideration of previously decided issues"). The Court has discretion to revisit its prior holding that Plaintiff plausibly alleged unreasonable and excessive use of force.

Second, the Court has compared Plaintiff's Second Amended Complaint, (Dkt. 45), and Third Amended Complaint, (Dkt. 117). The Court agrees with Plaintiff that the changes to the allegations regarding Taylor, including the allegations pleaded by Plaintiff to overcome qualified immunity, are trivial. *Compare* Second Am. Compl., Dkt. 45, at 24–25 ("By ordering Officer Pieper to impact [Ramos], Taylor escalated the situation, causing [Ramos] to further fear for his life, provoking him to seek safety by getting in the car."), *with* Third Am. Compl., Dkt. 117, at 34 ("By ordering Officer Pieper to impact [Ramos], Taylor escalated the situation, causing [Ramos] to further fear for his life, triggering his impulse to flee to safety by getting in the car and slowly pulling away."). Plaintiff has not changed any allegations substantially enough such that the Court's qualified immunity analysis would be different. Though Taylor vaguely claims that significant information was added about him, he does not point the Court to any specific allegations that are new and that should change the Court's analysis. Thus, the Court has already determined that Plaintiff sufficiently pleaded an unreasonable and excessive use of force under these facts. The Court chooses to exercise its discretion under the law of the case doctrine and will deny Taylor's second motion to dismiss; ruling otherwise would result in "unnecessary reconsideration of previously decided issues." *See Zarnow*, 614 F.3d at 171.

Even if the Court reached Taylor's arguments regarding new evidence and intervening law, its decision would be the same. In its Order denying Taylor's first motion to dismiss, the Court

4

provided lengthy reasoning regarding its decision to decline to consider Taylor's video exhibits at this stage of the pleadings. (Order Denying Mot. to Dismiss, Dkt. 73, at 6–11). The Court held that Plaintiff's inclusion of screenshots and a hyperlink had not sufficiently referenced the videos to meet the standard of the videos being "attached" to her Second Amended Complaint. (*Id.* at 7–9). The Court then reasoned that, even if the videos had been sufficiently referenced, concerns regarding authenticity make it premature to introduce the exhibits prior to discovery. (*Id.* at 10–11). For instance, the videos attached by Taylor were screen-recordings of the videos themselves; Plaintiff plausibly alleged that the videos had been altered; and Plaintiff plausibly alleged that the attached videos do not contain all APD perspectives of the event. (*Id.*).

Taylor now attaches to his second motion to dismiss Exhibits 1-9, which are media exhibits authenticated by the City of Austin's Custodian of Records; they include audio of a 911 call, multiple body-worn camera videos, dash cam videos, and a helicopter video. (Decl. of Custodian, Dkt. 124, at 23–24). He argues that (1) a ruling by the Fifth Circuit in 2024 has made it so the videos are sufficiently referenced in the Third Amended Complaint and (2) the Court's authenticity concerns are now resolved due to the exhibits being authenticated by the Custodian of Records.

The Court's concerns in its first Order declining to rely on Taylor's videos have not been assuaged. As Plaintiff points out in her Reply, five of the eight videos attached by Taylor are never referred to in her complaint in any form—screenshot or otherwise. (Reply to Mot. to Strike, Dkt. 132, at 10). Moreover, the Court disagrees that the Fifth Circuit's holding in *Winder* mandates the Court's review of Taylor's videos. In *Winder*, the appellants had "referenced the video in their complaint and brief" and "included several screenshots from the video in their complaint." *Winder v. Gallardo*, 118 F.4th 638, 643 (5th Cir. 2024). In this case, though Plaintiff's Third Amended Complaint—like her Second Amended Complaint—includes screenshots from certain videos, its

only reference to the video footage is to criticize the accuracy of the videos' timestamps.³ Plus, Taylor does not and cannot cite any language that a district court is *required* to review videos attached to a motion to dismiss, even if the exhibit *may* be viewed. *See Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) (stating the rule that a district court "*may* rely on documents that the pleadings incorporate by reference" and then reviewing a district court's consideration of body camera footage at the motion-to-dismiss stage as an implicit conversion to a motion for summary judgment) (emphasis added); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)) ("The court *may*, however, also consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.") (emphasis added); *Salinas v. Loud*, No. 22-11248, 2024 WL 140443, at *1 (5th Cir. Jan. 12, 2024) (per curiam) (citing *Jackson v. City of Hearne*, 959 F.3d 194, 204–05 (5th Cir. 2020)) ("However, when the pleadings incorporate evidence, such as documents or videos, those items *can* also be considered.") (emphasis added).

Additionally, the Court's concern that only some videos in the City of Austin's possession have been produced remains. Plaintiff's Third Amended Complaint notes that "[f]ootage is unavailable for officers Krycia, Morgan, or Ratcliff. No bodycam has been made publicly available from Officers Krycia, Morgan, Tavarez, or Ratliff." (Third Am. Compl., Dkt. 117, at 25 n.10). The exhibits provided by Taylor include body camera footage and dash cam footage from Officers Hart, Taylor, Cantu-Harkless, Pieper, and Tavarez. (Decl. of Custodian, Dkt. 124, at 23–24). Plaintiff has therefore plausibly alleged that videos from Officers Krycia, Morgan, and Ratliff exist but have yet to be produced, such that the attachments still "do not contain all APD perspectives of the event."

---

³ *See* Order Denying Mot. to Dismiss, Dkt. 73, at 9 (quoting *Slippi-Mensah v. Mills*, No. 1:15-CV-07750-NLH-JS, 2016 WL 4820617, at *3 (D.N.J. Sept. 14, 2016)) ("As one district court noted, 'Simply because a video that captured the events complained of in the complaint exists does not transform that video into a "document" upon which the complaint is based.'").

(*See* Order Denying First Mot. to Dismiss, Dkt. 73, at 11). And relatedly, Plaintiff continues to allege that timestamps on available videos are "inconsistent," which weighs against the Court considering the videos at this early stage.[4] (*See id.* at 10–11).

Finally, the Court disagrees that intervening precedent would change its qualified immunity analysis. Taylor cites to *Estevis v. Cantu*, 134 F.4th 793 (5th Cir. 2025) and *Barnes v. Felix*, 152 F.4th 669 (5th Cir. 2025). In *Estevis*, the Fifth Circuit held that the officers did not violate clearly established law where they shot at an individual who had "suddenly reversed and rammed [an officer's] cruiser," then "lurched [his car] forward over the curb and into fence." *Estevis*, 134 F.4th at 797. The Fifth Circuit distinguished this case from *Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009), a case this Court relied upon in denying Taylor's first motion to dismiss. In *Lytle*, the suspect was "fleeing down an open road and already 'three or four houses' away when the officer fired." *Estevis*, 134 F.4th at 797–98. In *Estevis*, the individual "was boxed in by police, had just rammed a police car and driven into a fence, and showed no signs of giving up. On these facts . . . the officers had good reason to believe they were still under threat from an erratic suspect who seconds earlier had decided to use his truck as a 5,000-pound weapon." *Id.* at 798.

*Estevis* is far from controlling in this case. Plaintiff pleaded that Ramos was boxed in by officers but drove his car slowly—not erratically—and in a direction away from the officers, rather than towards them. (Third Am. Compl., Dkt. 117, at 24). She also alleged that "[a]ny reasonable officer observing the scene unfold knew [Ramos] was driving away from the officers, not toward them, towards a dead end, not a threat to drive through or into a line of heavily armed police vehicles." (*Id.* at 25). The Court must take these pleaded facts as true, and *Estevis* does not change

---

[4] The Court also notes that Taylor does not argue the videos he attached "blatantly contradict" Plaintiff's alleged facts. *See Winder*, 118 F.4th at 643 (explaining that a court should not accept all well-pleaded facts as true where video footage before the court blatantly contradicts those allegations).

the Court's prior holding that Plaintiff has sufficiently alleged facts to support that Taylor's use of force was excessive and unreasonable under clearly established law.

Similarly, *Barnes* does not change the Court's conclusion. In *Barnes*, the Fifth Circuit explained that the officer "faced a split-second decision between only bad options." *Barnes*, 152 F.4th at 676. The car in that case had been pulled over on the shoulder of "Houston's busiest toll road," and when the individual began to flee, the Fifth Circuit held that the officer reasonably feared the suspect "start[ing] a perilous high-speed chase during rush hour" or "seriously injur[ing]" the officer. *Id.* In the instant case, however, Plaintiff has pleaded that Ramos was "inch[ing] away from officers toward the dead end blocked by dumpsters." (Third Am. Compl., Dkt. 117, at 24). Taking these facts as true, there was no risk of a dangerous high-speed chase nor a risk of injury to the APD officers. Unlike in *Barnes*, Taylor was not forced to make a split-second decision between "only bad options." *See Barnes*, 152 F.4th at 676. *Barnes* is therefore not instructive in this case.

Thus, in conclusion, the Court will use its discretion under the law of the case doctrine to decline to revisit its Order denying Taylor's first motion to dismiss, as the reasons put forth by Taylor to do so are unavailing. The Court will deny the motion to dismiss rather than strike it, however, as the Court is not convinced that it has the power to strike the motion to dismiss. Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Federal Rule of Civil Procedure 7 states which types of filings are "pleadings," and a motion to dismiss is not included in that list. Fed. R. Civ. P. 7(a); *see also Vega v. City of El Paso*, No. EP-21-CV-00116-DCG, 2022 WL 22412865, at *1 (W.D. Tex. June 24, 2022) (declining to strike a motion to dismiss after finding that motions to dismiss do not qualify as pleadings). The Court will therefore deny Taylor's second motion to dismiss under the law of the case doctrine and dismiss as moot Plaintiff's motion to strike. As a result, Taylor's motion to stay discovery pending a ruling on his

qualified immunity defense is moot. Finally, the Court will dismiss as moot Plaintiff's motion to convert Taylor's second motion to dismiss into a motion for summary judgment.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Taylor's Motion to Dismiss Plaintiff's Third Amended Complaint, (Dkt. 124), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant Taylor's Motion to Dismiss, (Dkt. 126), is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Taylor's Motion to Stay Discovery Pending a Ruling on Qualified Immunity, (Dkt. 134), is **DISMISSED AS MOOT**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Convert Defendant Taylor's Motion to Dismiss to a Rule 56 Motion for Summary Judgment, (Dkt. 141), is **DISMISSED AS MOOT**.

**SIGNED** on December 5, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE